DONNA FEDERICO, administratrix,[1] *vs.* FORD MOTOR COMPANY.

No. 05-P-960.

Middlesex. April 5, 2006. - September 28, 2006.

Present: ARMSTRONG, C.J., GELINAS, & COWIN, JJ.

*Motor Vehicle,* Defect. *Negligence,* Defective product, Expert opinion. *Evidence,* Expert opinion, Learned treatise. *Practice, Civil,* Interrogatories, Deposition, Costs. *Witness,* Expert, Cross-examination.

In a products liability action, there was no basis for setting aside the trial judge's decision to exclude certain expert testimony, where the plaintiff provided no evidence that the expert's theories had been accepted by the relevant scientific community in keeping with the criteria of *Commonwealth* v. *Lanigan,* 419 Mass. 15 (1994), and where there was no physical verification of the posited phenomenon. [455-458]

The judge in a products liability action did not err in admitting in evidence portions of learned treatises (in this case, reports of government studies) in connection with the cross-examination of the plaintiff's expert and the direct examination of the defendant's experts, where the judge found the reports to be reliable and relevant to one of the plaintiff's claims [458-459]; additionally, once the statements were permissibly read to the plaintiff's expert on cross-examination, they became admissible substantively, and the defendant could thus refer to them both when examining its own witnesses and when delivering final argument [460]; further, the redirect examination of the plaintiff's expert with regard to the reports was not unfairly limited [459-460].

Even were it error for the judge presiding over a products liability action to admit in evidence certain answers to interrogatories, the plaintiff was not prejudiced thereby, where the answers were evidentiary admissions only, and the plaintiff was free to explain, or even to contradict them, and where the judge's limiting instructions made it highly unlikely that the jury would misuse the hearsay and opinion in the plaintiff's answers. [460-462]

The plaintiff in a products liability action made no showing that the judge's findings supporting an award of deposition costs to the defendant were not warranted or that the judge abused his discretion in any respect in deciding what to award. [462-463]

CIVIL ACTION commenced in the Superior Court Department on August 17, 2000.

---

[1] Of the estate of Frank Federico.

The case was tried before *Stephen E. Neel*, J.

*Thomas J. Murray* (*Marylin A. Beck*, with him) for the plaintiff.

*John A.K. Grunert* for the defendant.

Cowin, J. The plaintiff, Donna Federico, as administratrix of the estate of Frank Federico, appeals from a final judgment on a jury verdict in favor of the defendant, Ford Motor Company (Ford). The action arose from an accident that occurred on June 15, 2000, in the parking lot of Stop & Shop Supermarket Company (Stop & Shop) in Medford in which a 1989 Mercury Sable automobile manufactured by Ford and operated by Nora T. Lombardi accelerated at a high rate of speed, hit a traffic barrier, jumped the curb, and struck and killed the plaintiff's decedent, Frank Federico. The plaintiff asserted claims against Lombardi for negligent operation of the motor vehicle; against Stop & Shop for negligent failure to install adequate barriers to protect patrons from erratic drivers; and against Ford for negligence and breach of warranty in the vehicle's manufacture.

The plaintiff settled with Lombardi and Stop & Shop before trial. After a trial in the Superior Court, the jury returned a verdict in favor of Ford. The plaintiff filed a timely notice of appeal from the ensuing final judgment, asserting that (1) the trial judge erroneously excluded certain expert testimony; (2) the trial judge erred in permitting the defendant to read extensively from government reports when cross-examining the plaintiff's expert witness and during subsequent direct examination of its own witnesses, and compounded the error by restricting redirect examination of the plaintiff's expert; and (3) the judge erred in permitting Ford to offer in evidence the plaintiff's answers to interrogatories propounded by then defendants Lombardi and Stop & Shop (before they settled with the plaintiff). The plaintiff appeals also from an order awarding Ford costs of $14,930.85, largely for deposition expenses. We affirm.

1. *Exclusion of expert testimony.* The plaintiff proceeded against Ford on a products liability theory, specifically asserting that a design defect in the Mercury Sable brought about sudden unintentional acceleration and that the malfunction, not operator error, caused the accident. In support thereof, the plaintiff proffered the testimony of Samuel J. Sero, an electronics expert,

who was prepared to state that Ford's design of the cruise control in the vehicle's electronic throttle system made it both possible and foreseeable that transient electronic signals or electromagnetic interference would cause the cruise control to signal the throttle to open to a near wide-open level despite the absence of any equivalent pressure by the operator on the accelerator.

Ford's motion in limine to exclude Sero's testimony concerning this theory was allowed on the ground that the plaintiff had not established that Sero's theory — that transient electronic signals could have affected the cruise control and caused the vehicle suddenly to accelerate — was based on a reliable scientific foundation. See *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 588-589 (1993); *Commonwealth* v. *Lanigan*, 419 Mass. 15, 25 (1994). In making his decision, the judge referred to, and adopted the reasoning of, Jarvis *vs.* Ford Motor Co., U. S. Dist. Ct., No. 92 Civ. 2900 (S.D.N.Y. July 6, 1999) (*Jarvis*), an unpublished decision by a judge of the United States District Court for the Southern District of New York,[2] wherein similar testimony by Sero regarding transient electronic signals was excluded as unreliable. The plaintiff now claims that the judge's reliance on the *Jarvis* decision was error in that the judge failed to exercise independent discretion in determining whether Sero's methodology was sufficiently reliable.[3]

It is unnecessary to repeat the reasoning supporting the presently accepted criteria regarding the admission of scientific opinion testimony and the judge's "gatekeeper role" in the process. See *Commonwealth* v. *Lanigan*, 419 Mass. at 26. "The

[2]The 1999 decision was followed by a trial in which the jury returned a verdict for the plaintiff; the trial judge then granted Ford's motion for judgment notwithstanding the verdict. *Jarvis* v. *Ford Motor Co.*, 69 F.Supp. 2d 582 (S.D.N.Y. 1999). Subsequently the Court of Appeals for the Second Circuit reinstated the jury verdict. *Jarvis* v. *Ford Motor Co.*, 283 F.3d 33 (2d Cir. 2002). The evidentiary ruling in the initial *Jarvis* decision upon which the trial judge relied here was not the subject of these subsequent cases.

[3]The plaintiff's argument on the issue focuses principally on what the plaintiff perceives to be an excessive reliance by the judge on the *Jarvis* decision and an abandonment of his obligation to make an independent evaluation of the reliability of Sero's scientific methodology. While not emphasized, however, the plaintiff's point on appeal is that it was error to exclude Sero's testimony, and we examine the merits of the judge's determination as well.

ultimate test . . . is the reliability of the theory or process underlying the expert's testimony." *Id.* at 24. While general acceptance by the scientific community, see *Frye* v. *United States*, 293 F. 1013, 1014 (D.C. Cir. 1923), continues to be a relevant factor, it is no longer the sole test. "[A] proponent of scientific opinion evidence may demonstrate the reliability or validity of the underlying scientific theory or process by some other means, that is, without establishing general acceptance." *Commonwealth* v. *Lanigan, supra* at 26. Whether a given methodology can be tested, and whether there has been an opportunity for peer review or publication, have been identified as pertinent considerations. *Id.* at 25, citing *Daubert* v. *Merrell Dow Pharmaceuticals, Inc., supra* at 593-594. The judge's findings on the motion must be supported by the evidence, see *Commonwealth* v. *Patterson*, 445 Mass. 626, 639 (2005). The judge's ultimate determination is reviewed for abuse of discretion, see *Canavan's Case*, 432 Mass. 304, 311 (2000) (supplanting *Commonwealth* v. *Vao Sok*, 425 Mass. 787, 797 [1997], after the Supreme Court rejected de novo review of such determinations in *General Elec. Co.* v. *Joiner*, 522 U.S. 136, 141-143 [1997]).

There is no basis on the record for setting aside the judge's decision. While he obviously considered, and ultimately agreed with, the reasoning in the *Jarvis* decision, it is clear that he deliberated on the issue and exercised independent judgment. He read the transcript of Sero's deposition, considered the parties' evidence and arguments, and engaged in discussion with counsel. The plaintiff has made no showing that the judge bound himself by the *Jarvis* decision without acting on his own view of the evidence pertaining to reliability.

As for the merits, the judge's assessment was warranted, and his exclusion of the proffered testimony was not an abuse of discretion. The plaintiff provided no evidence that Sero's theories had been accepted by the relevant scientific community; indeed, statements from other studies in evidence specifically rejected Sero's conclusions. There was evidence that Sero had not tested his theory successfully, and he acknowledged that it would be difficult, if not impossible, to do so. He testified at his deposition that he had been unable to cause a vehicle to acceler-

ate spontaneously through the introduction of transient electronic signals. Compare *Rotman* v. *National R.R. Passenger Corp.*, 41 Mass. App. Ct. 317, 320 (1996). Nor was there evidence that the theory had been published or was a subject of peer review. See *Commonwealth* v. *Lanigan*, 419 Mass. at 25. On this record, and particularly given the absence of any physical verification of the posited phenomenon, the judge could permissibly determine that the evidence of scientific reliability of Sero's hypothesis did not satisfy the *Lanigan* criteria.[4]

2. *Use of learned treatises.* The plaintiff argues that the judge erred in permitting the defendant to use portions of learned treatises (in this case, reports of government studies) in connection with the cross-examination of her expert, William D. Berg, and the direct examination of its own experts. The treatises consisted of the report of a 1989 National Highway Traffic Safety Administration (NHTSA) study entitled "Examination of Sudden Acceleration," as well as similar documents prepared by agencies of the Canadian and Japanese governments. The plaintiff also complains that her attempt on redirect examination to have her expert rebut the government material was unfairly limited, and that it was error to permit defense counsel to refer to such material as substantive evidence in his closing.

In *Commonwealth* v. *Sneed*, 413 Mass. 387, 395-396 (1992), the Supreme Judicial Court adopted Proposed Mass.R.Evid. 803(18) governing the admission of learned treatises in certain circumstances.[5] The material is initially admissible on cross-examination only after the judge decides that the treatise is "a

---

[4]In response to a question at oral argument, the plaintiff's counsel submitted a list of six cases from other jurisdictions wherein Sero's expert testimony that sudden acceleration can be induced by electromagnetic interference has been admitted. While the admission of such testimony elsewhere is relevant and of interest, neither the trial judge, who was informed of only two of the cases and who considered those two, nor this court is bound by the decisions of other tribunals. We also have not been shown what criteria were in place in those other jurisdictions for judging the question or what was presented to the "gatekeeper" in support of, or in opposition to, admission.

[5]Proposed Mass.R.Evid. 803(18) provides: "The following are not excluded by the hearsay rule, even though the declarant is available as a witness: . . . (18) Learned Treatises. To the extent called to the attention of an expert witness upon cross-examination, statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the

reliable authority." *Id.* at 396. The judge must also "determine the relevance and materiality of the statement and should consider carefully any claimed unfairness or confusion that admission of the statement may create." *Ibid.* The statement may be read into evidence, and the witness should be given an opportunity to assess the statement and comment on it during either cross-examination or redirect examination. *Ibid.* See the Note of the Advisory Committee to Study the Rules of Evidence on Proposed Mass.R.Evid. 803(18) (July, 1980).[6] Once the statement has been admitted, it is admitted for its substance. *Commonwealth* v. *Sneed,* 413 Mass. at 395-396 (rule 803[18] accords substantive value to treatises admitted in accordance with its terms).

We discern no error in the manner in which the judge applied these principles. It is unclear at best that the plaintiff objected to much of the defendant's use of the government reports. If the plaintiff did not object, any claimed error was waived. See *Wynn & Wynn, P.C.* v. *Massachusetts Commn. Against Discrimination,* 431 Mass. 655, 674 (2000). Nor did the plaintiff request that the judge exercise his discretion to limit the length of the excerpts. Passing the question of waiver, the reports, permissibly found by the judge to be reliable and relevant to the plaintiff's claim that the accident was caused by a sudden acceleration brought about by a malfunction, were properly used consistently with Proposed Mass.R.Evid. 803(18) and the decision in *Commonwealth* v. *Sneed, supra.*

We have reviewed the redirect examination of the plaintiff's expert, Berg, and conclude that the examination was not unfairly limited. Contrary to the plaintiff's contention, the record shows that her expert was given considerable latitude in explaining his view of the NHTSA study and how the study differed from his own position. The limited number of objections sustained by the judge were grounded squarely on applicable rules of

witness or by other expert testimony or by judicial notice. If admitted, the statements may be read into evidence but may not be received as exhibits."

[6]Concerning exception (18), the advisory committee's note provides, in part: "This provision is similar to the federal rule, with the exception that the language 'or relied upon by him in direct examination' in the federal rule is stricken. The result is to make treatises unavailable to bolster direct examination . . . ."

evidence and did not improperly restrict the witness's rebuttal in any way.

The plaintiff asserts in addition that it was error to permit the defendant to use the statements from the reports in connection with the direct examination of its own expert witnesses, William Koeppel and Victor Declercq. There appears to have been no objection. Passing the question of possible waiver, there was no error. Once the statements were permissibly read to the plaintiff's expert on cross-examination, they became admissible substantively. See *ibid.* The defendant could thus refer to the statements both when examining its own witnesses and when delivering final argument.[7]

3. *Use of answers to interrogatories.* The plaintiff charges that it was error to permit the defendant to introduce in evidence the plaintiff's answers to certain interrogatories served by the settling defendants, Lombardi and Stop & Shop. In response to Lombardi's interrogatory, the plaintiff, conceding that she had not witnessed the event, incorporated in her answer a report of the Medford police that contained an opinion by a police sergeant that Lombardi had caused the accident. With respect to Stop & Shop, the defendant introduced the plaintiff's response that Stop & Shop had failed to take adequate precautions to protect its patrons from erratic drivers. The plaintiff argues that her answers contained inadmissible hearsay and nonexpert opinion and should have been excluded for those reasons. She complains also that use of the answers informed the jury that there had been claims against other parties and invited speculation that the plaintiff might already have benefited from settlements.

Rule 33(b) of the Massachusetts Rules of Civil Procedure, 365 Mass. 790 (1974), provides in relevant part as follows: "the answers [to interrogatories] may be used to the extent permitted by the rules of evidence." A party is entitled to

[7]Perhaps recognizing that she is swimming upstream on the issue in light of the adoption of Proposed Mass. R. Evid. 803(18), the plaintiff argues that the effect of the rule, together with the practice, in this jurisdiction, of not limiting the scope of cross-examination, unfairly permitted the defendant to make its case by means of hearsay and that the law governing the admission of statements from learned treatises should be altered. The wisdom of such a change is for the Legislature or the Supreme Judicial Court to judge.

introduce an out-of-court statement by an opposing party on a subject of relevance. See Liacos, Brodin, & Avery, Massachusetts Evidence § 8.8.1 at 496-497 (7th ed. 1999). "Statements of a party-opponent need not be made on personal knowledge to be admissible; they are not subject to the opinion rule." *Id.* at 498, citing *Hallet* v. *Rimer*, 329 Mass. 61 (1952). See *LaPlante* v. *Maguire*, 325 Mass. 96 (1949); *Ellis* v. *Pierce*, 172 Mass. 220 (1898); *Mattoon* v. *Pittsfield*, 56 Mass. App. Ct. 124, 137 (2002). "Answers to interrogatories in the same case constitute evidentiary, not judicial, admissions." *General Elec. Co.* v. *Assessors of Lynn*, 393 Mass. 591, 603 n.8 (1984).[8]

Obviously, the contents of the answers to interrogatories must be relevant to an issue in the case. Determinations of relevance are ordinarily left to the discretion of the trial judge. See *Anthony's Pier Four, Inc.* v. *HBC Assocs.*, 411 Mass. 451, 477 (1991). Here, the judge acknowledged that the question of relevance was a close one. The answers contained the plaintiff's opinions at that time, based on out-of-court sources, regarding the causes of the accident. While there are occasions when a plaintiff's state of mind regarding the causes of an accident will be relevant, her state of mind may not have been probative of anything meaningful here. This is particularly so where the plaintiff, a fiduciary, was not a percipient witness, and her responses were part of a discovery process that defers questions regarding the admissibility of answers until trial.

We conclude, however, that even were it error to admit the answers, the plaintiff was not prejudiced. As indicated, the answers were evidentiary admissions only, see note 8, *supra*, and the plaintiff was free to explain, or even to contradict,

[8]Judicial admissions are conclusive on an issue while evidentiary admissions are not. See, e.g., *Houston* v. *Houston*, 64 Mass. App. Ct. 529, 533 n.7 (2005), and cases cited. See also *Beaupre* v. *Cliff Smith & Assocs.*, 50 Mass. App. Ct. 480, 484 n.8 (2000). "Unlike admissions made by a party answering, or not answering a request, admissions contained in answers to interrogatories are not binding upon the admitting party. At most, the answers of a party to interrogatories may be read by the other party into evidence at trial." Liacos, Brodin, & Avery, Massachusetts Evidence § 2.3.1 at 10 (7th ed. 1999). See Smith & Zobel, Rules Practice § 33.6 at 323 (1975); *Kourouvacilis* v. *American Fedn. of State, County & Mun. Employees*, 65 Mass. App. Ct. 521, 533 n.18 (2006).

them. In addition, the judge's limiting instructions made it highly unlikely that the jury would misuse the information. It is presumed that the jury followed those instructions. See *Commonwealth* v. *Anderson*, 445 Mass. 195, 214 (2005). Any concern of the plaintiff that the jury would assume that the plaintiff had settled with Lombardi or Stop & Shop was alleviated by the judge's instruction that the case was being tried only against Ford; that the jury would be asked to determine only whether Ford, the sole defendant, was liable; and that they were not to speculate about another party. In a subsequent instruction, the judge stated that it "d[id] not matter whether other concurrent causes contributed to the plaintiff's injuries, so long as you find that [Ford's] actions were a substantial factor in producing them. If [Ford's] actions were a substantial factor, then they were a legal cause." We are satisfied that the jury understood that they were to decide whether Ford was negligent without reference to possible negligence or settlement by any other person or company.

Likewise, the judge addressed the hearsay and opinion that were present in the plaintiff's answers. In this regard, in reference to the plaintiff's reliance on a police report that Lombardi had operated the vehicle negligently, the judge instructed that the jury were to consider the answers only for the proposition that, "at some time during this litigation," the plaintiff believed that Lombardi was negligent, and only for that purpose. He stated expressly that the reference to the police report "does not make the statements in that police report admissible as evidence." The limitations removed any prejudicial effect that the error, if it were one, was likely to have.

4. *Deposition costs.* Costs incurred in connection with the taking of depositions may be allowed if "the court finds that the taking of the deposition was reasonably necessary, whether or not the deposition was actually used at the trial." Mass.R. Civ.P. 54(e), as amended, 382 Mass. 829 (1981). The judge conducted a nonevidentiary hearing[9] and made the required findings. See *Waldman* v. *American Honda Motor Co.*, 413 Mass. 320, 327-328 (1992). The plaintiff has made no showing either that the findings are not warranted or that the judge

---

[9]The plaintiff did not request an opportunity to present evidence.

abused his discretion in any respect in deciding what to award.[10] That Stop & Shop eventually settled and was released as a defendant does not render unreasonable costs associated with Ford's cross claim while Stop & Shop remained a party.

*Judgment affirmed.*

*Order awarding costs affirmed.*

---

[10]The judge did not award all the costs that were requested.